## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TOM MALUGA,<br><br>        Plaintiff,<br><br>   -against-<br><br>RAVEN INDUSTRIES, INC., MARC E. LEBARON, JASON M. ANDRINGA, THOMAS S. EVERIST, JANET M. HOLLOWAY, KEVIN T. KIRBY, LOIS M. MARTIN, RICHARD W. PAROD, and DANIEL A. RYKHUS,<br><br>        Defendants. | Case No.: _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Tom Maluga ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.  This is an action brought by Plaintiff against Raven Industries, Inc. ("Raven" or the "Company") and the members of Raven's board of directors (the "Board" or the "Individual Defendants" and together with Raven, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition of Raven by CNH Industrial N.V. and CNH Industrial South Dakota, Inc., a wholly owned subsidiary of CNH Industrial N.V. (together, "CNH") (the "Proposed Merger").

2.  On June 20, 2021, the parties entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which Raven shareholders will have the right to receive $58.00 in cash, without interest, for each share of common stock of Raven they own immediately prior to

the effective time of the Proposed Merger (the "Merger Consideration"). Upon consummation of the Proposed Merger, Raven will become a wholly owned subsidiary of CNH.

3.      On July 19, 2021, in order to solicit Raven shareholders to vote in favor of the Proposed Merger, Defendants authorized the filing of a materially incomplete and misleading proxy statement on Schedule 14A (the "Proxy").

4.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for Raven, and (ii) the valuation analyses performed by Raven's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan").

5.      The special meeting of Raven shareholders to vote on the Proposed Merger is forthcoming (the "Shareholder Vote"). It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the Shareholder Vote so Plaintiff can make an informed decision on the Proposed Merger and properly exercise his corporate suffrage rights.

6.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Merger until the material information discussed herein is disclosed to Raven's shareholders sufficiently in advance of the Shareholder Vote or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7.       This Court has original jurisdiction over this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8.      Personal jurisdiction exists over each Defendant either because the Defendant

conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman* 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* At 1316.

9.      Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, Raven's common stock trades on The Nasdaq Stock Market, which is headquartered in this District rendering venue in this District appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## **PARTIES**

10.      Plaintiff is, and at all relevant times has been, a shareholder of Raven.

11.      Defendant Raven is a South Dakota corporation with its principal executive offices located at 205 East 6th Street, P.O. Box 5107, Sioux Falls, South Dakota.  Raven's common stock trades on The Nasdaq Stock Market under the ticker symbol "RAVN".

12.      Individual Defendant Marc E. LeBaron is, and has been at all relevant times, a director and Chairman of the Board of Raven.

13.      Individual Defendant Jason M. Andringa is, and has been at all relevant times, a director of Raven.

14.     Individual Defendant Thomas S. Everist is, and has been at all relevant times, a director of Raven.

15.     Individual Defendant Janet M. Holloway is, and has been at all relevant times, a director of Raven.

16.     Individual Defendant Kevin T. Kirby is, and has been at all relevant times, a director of Raven.

17.     Individual Defendant Lois M. Martin is, and has been at all relevant times, a director of Raven.

18.     Individual Defendant Richard W. Parod is, and has been at all relevant times, a director of Raven.

19.     Individual Defendant Daniel A. Rykhus is, and has been at all relevant times, a director and President and Chief Executive Officer of Raven.

20.     The Individual Defendants referred to in ¶¶ 12-19 are collectively referred to herein as the "Individual Defendants" and with Raven they are referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### I.    Background and the Proposed Merger

21.     Raven was founded in Sioux Falls, South Dakota in 1956 as a designer and manufacturer of high-altitude research balloons for the American space program to help solve the great challenges related to space exploration.  From that single product line, Raven grew into a successful and highly diversified technology company which operates in three business units: (i) Raven Applied Technology, (ii) Raven Engineered Films, and (iii) Raven Aerostar.

22.     CNH is engaged in the design, production, marketing, sale, and financing of agricultural and construction equipment, trucks, commercial vehicles, buses and specialty vehicles

for firefighting, defense and other uses, as well as engines, transmissions and axles for those vehicles and engines for marine and power generation application.  CNH has industrial and financial services companies located in 44 countries and a commercial presence in approximately 180 countries.  CNH's principal executive office is located at 25 St. James's Street, London, SW1A, 1HA, United Kingdom.

23.    On June 21, 2021, CNH issued a press release posted on Raven's website announcing the Proposed Merger, which states in relevant part:

**CNH Industrial to Acquire Raven Industries, Enhancing Precision Agriculture Capabilities and Scale**

LONDON & SIOUX FALLS, S.D.--(BUSINESS WIRE)--Jun. 21, 2021-- CNH Industrial N.V. (NYSE: CNHI / MI: CNHI) today announced that it has entered into an agreement to acquire 100% of the capital stock of Raven Industries, Inc. (NASDAQ: RAVN), a US-based leader in precision agriculture technology for US$58 per share, representing a 33.6% premium to the Raven Industries 4-week volume-weighted average stock price, and US$2.1 billion Enterprise Value. The transaction will be funded with available cash on hand of CNH Industrial. Closing is expected to occur in the fourth quarter of 2021, subject to the satisfaction of customary closing conditions, including approval of Raven shareholders and receipt of regulatory approvals.

This press release features multimedia. View the full release here: https://www.businesswire.com/news/home/20210620005255/en/

The acquisition builds upon a long partnership between the two companies and will further enhance CNH Industrial's position in the global agriculture equipment market by adding strong innovation capabilities in autonomous and precision agriculture technology.

"Precision agriculture and autonomy are critical components of our strategy to help our agricultural customers reach the next level of productivity and to unlock the true potential of their operations," said Scott Wine, Chief Executive Officer, CNH Industrial. "Raven has been a pioneer in precision agriculture for decades, and their deep product experience, customer driven software expertise and engineering acumen offer a significant boost to our capabilities. This acquisition emphasizes our commitment to enhance our precision farming portfolio and aligns with our digital transformation strategy. The combination of Raven's technologies and CNH Industrial's strong current and new product portfolio will provide our customers with novel, connected technologies, allowing them to be more productive and

efficient."

"Our Board and Management are excited about this partnership and what it means for our future," said Dan Rykhus, President & Chief Executive Officer for Raven Industries. "For 65 years, our company has been committed to solving great challenges. Part of that commitment includes delivering groundbreaking innovation by developing and investing in our core capabilities and technology. By coming together with CNH Industrial, we believe we will further accelerate that path as well as bring tremendous opportunities and value to our customers — once again fulfilling our purpose to solve great challenges. Our relationship with CNH Industrial has expanded over decades, and we have a deep respect for one another and a shared commitment to transform agriculture practices across the world. We look forward to CNH Industrial leveraging the Raven talent and culture, as well as the Sioux Falls community, as part of their vision and future success."

"Raven Industries' capabilities, innovation culture, entrepreneurial spirit and engineering talent are impressive and will continue to thrive as part of the CNH Industrial family. Sioux Falls is and will continue to be a true center of excellence," added Wine. "We are incredibly excited to collaborate in bringing our customers more integrated precision and autonomous solutions, not only to improve productivity and profitability, but also promote more sustainable solutions and environmental stewardship. Together, our teams will create a stronger business for our employees, dealer network, and customers, enabling us to shape the future of agriculture, augment our world-leading sustainability credentials, and maximize our growth opportunities."

Headquartered in Sioux Falls, South Dakota, Raven Industries is organized into three business divisions: Applied Technology (precision agriculture), Engineered Films (high-performance specialty films) and Aerostar (aerospace) with consolidated net sales of US$ 348.4 million for the twelve months ended January 31, 2021. The company is a global technology partner for key strategic OEMs, agriculture retailers and dealers. The transaction is expected to generate approximately US$400 million of run-rate revenue synergies by calendar year 2025, resulting in US$150 million of incremental EBITDA.

The Engineered Films and Aerostar segments are industry leaders in the high performance specialty films and stratospheric platform industries, respectively, and CNH Industrial believes they represent attractive independent businesses with excellent near and long-term potential. Accordingly, CNH Industrial plans to undertake a strategic review of each business to best position them for future success and maximize shareholder value.

CNH Industrial does not expect the proposed acquisition will have any impact on its guidance for 2021. The acquisition is expected to be funded with Group consolidated cash not affecting third party debt of industrial activities. Cash consideration for the transaction is not included in the free cash flow definition, and

consequently it will not affect its free cash flow guidance for the FY 2021E.

Barclays and Goldman Sachs acted as financial advisors to CNH Industrial and Sullivan & Cromwell LLP as its legal advisor. J.P. Morgan Securities LLC acted as financial advisor to Raven and Davis Polk & Wardwell LLP as its legal advisor.

**Conference Call**

CNH Industrial will host an investor conference call today at 2:30 p.m. CEST/ 1:30 p.m. BST/ 8:30 a.m. EDT to discuss this transaction. The call can be followed live online at this link and a recording will be available later on the Company's website www.cnhindustrial.com. A presentation will be made available on the CNH Industrial website prior to the call.

**About CNH Industrial**

CNH Industrial N.V. (NYSE: CNHI /MI: CNHI) is a global leader in the capital goods sector with established industrial experience, a wide range of products and a worldwide presence. Each of the individual brands belonging to the Company is a major international force in its specific industrial sector: Case IH, New Holland Agriculture and Steyr for tractors and agricultural machinery; Case and New Holland Construction for earth moving equipment; Iveco for commercial vehicles; Iveco Bus and Heuliez Bus for buses and coaches; Iveco Astra for quarry and construction vehicles; Magirus for firefighting vehicles; Iveco Defence Vehicles for defence and civil protection; and FPT Industrial for engines and transmissions. More information can be found on the corporate website: www.cnhindustrial.com

**About Raven Industries, Inc.**

Raven Industries (NASDAQ: RAVN) provides innovative, high-value products and systems that solve great challenges throughout the world. Raven is a leader in precision agriculture, high-performance specialty films, and aerospace and defense solutions, and the company's groundbreaking work in autonomous systems is unlocking new possibilities in areas like farming, national defense, and scientific research. Since 1956, Raven has designed, produced, and delivered exceptional solutions, earning the company a reputation for innovation, product quality, and unmatched service. For more information, visit https://ravenind.com.

**Additional Information and Where to Find It**

This communication is not intended to and does not constitute an offer to sell or the solicitation of an offer to subscribe for or buy or an invitation to purchase or subscribe for any securities or the solicitation of any vote or approval in any jurisdiction, nor shall there be any sale, issuance or transfer of securities in any jurisdiction in contravention of applicable law. In connection with the proposed transaction, Raven Industries, Inc. ("Raven") will file a proxy statement on

Schedule 14A with the Securities and Exchange Commission ("SEC"), as well as other relevant materials regarding the transaction. Following the filing of the definitive proxy statement, Raven will mail the definitive proxy statement and a proxy card to its shareholders in connection with the transaction. INVESTORS AND SECURITY HOLDERS OF RAVEN ARE URGED TO READ THE PROXY STATEMENT AND OTHER RELEVANT DOCUMENTS FILED OR TO BE FILED WITH THE SEC CAREFULLY WHEN THEY BECOME AVAILABLE BECAUSE THEY WILL CONTAIN IMPORTANT INFORMATION ABOUT CNH INDUSTRIAL N.V. ("CNH INDUSTRIAL"), RAVEN, THE TRANSACTION AND RELATED MATTERS. Investors and security holders will be able to obtain copies of the proxy statement (when available) as well as other filings containing information about CNH Industrial and Raven, without charge, at the SEC's website, http://www.sec.gov, and Raven stockholders will receive information at an appropriate time on how to obtain transaction-related documents free of charge from Raven.

**Participants in Solicitation**

Raven and its directors and executive officers, and CNH Industrial and its directors and executive officers, may be deemed to be participants in the solicitation of proxies in connection with the proposed transaction. Information about the directors and executive officers of Raven is set forth in the proxy statement for Raven's 2021 Annual Meeting of Stockholders, which was filed with the SEC on April 9, 2021. Information about the directors and executive officers of CNH Industrial is set forth in CNH Industrial's annual report on Form 20-F for the year ended December 31, 2020, which was filed with the SEC on March 3, 2021. Investors may obtain additional information regarding the interest of such participants by reading the proxy statement regarding the proposed transaction when it becomes available.

## II.    The Proxy Omits Material Information

24.    On July 19, 2021, Defendants filed a materially incomplete and misleading Proxy with the SEC.  The Individual Defendants had a duty to carefully review the Proxy before it was filed with the SEC and disseminated to Raven's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for Raven's shareholders to make an informed decision in connection with the Proposed Merger.

A.      The Misleadingly Incomplete Financial Projections

25.      The Proxy omits material information regarding the financial projections for Raven and relied upon by J.P. Morgan in its analyses.  The Proxy provides values for non-GAAP financial metrics, including EBITDA, but fails to provide line items used to calculate these metrics. The financial projections also do not include unlevered free cash flows or the underlying line items

26.      The projections served as a primary reason for the Board to approve the Proposed Merger and for J.P. Morgan to find the Merger Consideration "fair" to Raven shareholders. The information is plainly material and speaks squarely to the question that the Company's shareholders must answer in determining whether to vote in favor of the Proposed Merger: Is the Merger Consideration more or less valuable than a full stake in the standalone company? Without the material information regarding the projections, Defendants present the Company's shareholders with only a fraction of the equation, rendering them unable to answer this question and assess the fairness of the Proposed Merger. Thus, the omitted information is plainly material to shareholders and must be disclosed.

27.      With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. Accordingly, Defendants have disclosed some of the valuation information relied upon by J.P. Morgan and the Board but have failed to disclose the material information regarding the projections. These omissions render the summary of J.P. Morgan's value and financial picture in the Proxy misleadingly incomplete.

B.      The Misleadingly Incomplete Summary of J.P. Morgan's Valuation Analyses

28.      The Proxy describes J.P. Morgan's fairness opinion and the various valuation analyses performed in support of its opinions.  Defendants concede the materiality of this

information by including the fairness opinions and valuation analyses among the factors considered in recommending the Proposed Merger. Proxy at 38. However, the summary of J.P. Morgan's fairness opinion and analyses provided in the Proxy fails to include key inputs and assumptions underlying the analyses. Without this information, as described below, Raven shareholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on the fairness opinions in determining whether to vote in favor of the Proposed Merger. This omitted information, if disclosed, would significantly alter the total mix of information available to Raven's shareholders.

29. In summarizing J.P. Morgan's *Public Trading Multiples Analysis*, the Proxy fails to disclose: (i) the individual metrics for each company, including the equity research analyst estimate for such company's (a) EBITDA, or (b) in the case of the Autonomy business, FV/2023E EBITDA, and (ii) the inputs and assumptions underlying the multiple reference range for Raven of 11.5x to 22.5x for FV/2023 EBITDA.

30. In summarizing J.P. Morgan's *Public Trading Multiples Sum-of-the-Parts Analysis*, the Proxy fails to disclose the individual metrics for each of the selected companies.

31. J.P. Morgan's *Discounted Cash Flow Analysis* is also materially misleading. The Proxy fails to disclose: (i) the inputs and assumptions underlying the terminal growth rates, (ii) the unlevered free cash flows, (iii) the inputs and assumptions underlying the range of discount rates chosen by J.P. Morgan, and (iv) the number of fully diluted shares outstanding of Raven.

32. In summarizing J.P. Morgan's *Discounted Cash Flow Sum-of-the-Parts Analysis*, the Proxy fails to disclose: (i) the inputs and assumptions underlying the terminal growth rates, (ii) the unlevered free cash flows, (iii) the inputs and assumptions underlying the range of discount rates chosen by J.P. Morgan, and (iv) the number of fully diluted shares outstanding of Raven.

33.     In summarizing J.P. Morgan's *Analyst Price Targets* analysis, the Proxy fails to disclose the specific equity research analyst share price targets observed.

34.     These material omissions render the summary of J.P Morgan's valuation analyses included in the Proxy misleadingly incomplete.

35.     Absent disclosure of the foregoing material information prior to the Shareholder Vote, Plaintiff will be unable to make an informed decision regarding the Proposed Merger, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I
### Against All Defendants for Violations of Section 14(a) of the Exchange Act

36.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

38.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

39.     The omission of information from a proxy will violate Section 14(a) if other SEC

regulations specifically require disclosure of the omitted information.

40.     Defendants have issued the Proxy with the intention of soliciting Raven's common shareholders' support for the Proposed Merger.  Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, among other things: (i) financial projections for Raven, and (ii) J.P. Morgan's valuation analyses performed in support of its fairness opinion.

41.     In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated in or omitted from the Proxy, but failed to obtain and disclose such information to Raven's shareholders, though they could have done so without extraordinary effort.

42.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. As officers or directors of the Company and signatories to the Proxy, the Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve the Proposed Merger and solicit shareholder consent; indeed, the Proxy states that J.P. Morgan reviewed and discussed its financial analyses with the Board, and further states that the Board considered the financial analyses provided by J.P. Morgan, as well as its fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the financial projections and the details surrounding the process leading up to the signing of the Merger Agreement.  The

Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be misleadingly incomplete.  Indeed, the Individual Defendants were required to review the financial analyses in connection with their receipt of the fairness opinion, question J.P. Morgan as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

43.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in: (i) their decision to omit material information from the Proxy; or (ii) their failure to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as Raven's officers and directors.

44.     Raven is also deemed negligent as a result of the Individual Defendants' negligence in preparing and/or reviewing the Proxy.

45.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to make an informed decision on the Proposed Merger if such misrepresentations and omissions are not corrected prior to the special meeting of Raven's shareholders.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

<u>COUNT II</u>
**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

46.      Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47.      The Individual Defendants acted as controlling persons of Raven within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of Raven, and participation in and/or awareness of Raven's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Raven, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48.      Each of the Individual Defendants, as a signatory to the Proxy, was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49.      In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Raven, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of the Board to approve the Proposed Merger.

50.      In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or

gave their input on the content of those descriptions.

51.      By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52.      As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53.      Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily enjoining Defendants and all persons acting in concert with them from consummating the Proposed Merger, until Defendants disclose the material information discussed above which has been omitted from the Proxy;

B.      Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 5, 2021

**MONTEVERDE & ASSOCIATES PC**

*/s/ Juan E. Monteverde*

Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*